697 So.2d 921 (1997)
Gloria ONDO, as Personal Representative of the Estate of Michael E. Ondo, on Behalf of herself and the survivors, Appellant,
v.
F. GARY GIESEKE, P.A., and Matthew R. Moore, M.D., Steven D. Gelbard, M.D., Glen Sutherland, M.D., Ted Carson, M.D., Neil Katz, M.D. and Galen Of Florida Inc., d/b/a Humana Hospital-Cypress f/k/a pompano beach medical center, Appellees.
Nos. 96-2767, 96-3067.
District Court of Appeal of Florida, Fourth District.
July 23, 1997.
Rehearing, Rehearing, and Certification Denied August 28, 1997.
Joseph S. Kashi of Sperry, Shapiro & Kashi, P.A., and Peter Mineo, Jr. of Peter Mineo, Jr., P.A., Fort Lauderdale, for appellant.
Walter G. Campbell, Jr. of Krupnick, Campbell, Malone, Roselli, Buser, Slama & Hancock, P.A., Fort Lauderdale, for Appellees-F. Gary Gieseke, P.A. and Matthew R. Moore, M.D.
Rehearing, Rehearing En Banc, and Certification Denied August 28, 1997.
SHAHOOD, Judge.
Appellant, Gloria Ondo as personal representative of the Estate of Michael E. Ondo, appeals the order granting partial final summary judgment in favor of appellees, F. Gary Gieske, P.A. and Matthew R. Moore, M.D. Finding the trial court did not err in granting summary judgment, we affirm.
*922 This is an appeal from a medical malpractice action which had its origin on October 13, 1992, when appellee, Matthew R. Moore, M.D. performed surgery on the decedent to implant metal rods in his back to stabilize his spine. Some time following the surgery, it was discovered that the implanted rods had become infected. A second surgery which was performed on November 16, 1992, confirmed the fact that the rods were infected. After the second surgery, the decedent suffered illness and ultimately died on September 1, 1993.
On November 22, 1994, appellant, Gloria Ondo, as personal representative of the decedent's estate, filed a petition for a 90-day extension of time to file a wrongful death action. On May 1, 1995, appellant mailed notice of intent to initiate a medical malpractice lawsuit to appellees, who denied her claim on July 11, 1995. On October 2, 1995, appellant, filed a wrongful death action against the appellees, and other defendants who are not parties to this appeal.
The following interrogatories were propounded to appellant by appellees and the other defendants:
Interrogatories propounded by F. GARY GIESEKE, P.A. and MATTHEW R. MOORE, M.D. on 12/18/95:
25. State the date and place and a description of each complaint for which Plaintiff contends the Defendant refused to attend or treat Plaintiff.
On or about October 13, 1992 when the metal rods were implanted and that was the time period in which we became aware of the injuries sued on in this action.
28. When did the Plaintiff first retain an attorney for representation for the subject of this lawsuit.
On or about March of 1993.
Supplemental Interrogatories propounded by F. GARY GIESEKE, P.A. and MATTHEW R. MOORE, M.D. on 12/20/95:
2. State the date you and decedent became aware of the injuries sued on in this action and describe in detail the circumstances under which you and decedent became aware of each such injury; state the date you and decedent became aware that the injuries sued on in this action were caused, or may have been caused, by medical negligence; and describe in detail the circumstances under which you and decedent became aware of the cause of said injuries.
The date the infection began we were more than aware that this procedure should not have been done and as a result of this procedure my husband died on September 1, 1993.
Interrogatories propounded by Pompano Beach Medical Center on 12/5/95:
10. State the date on which you became aware of the injuries sued on in this action, and describe in detail the circumstances under which you became aware that the injuries sued on in this action were caused or may have been caused by medical negligence; and describe in detail the circumstances under which you became aware of the cause of said injuries.
On November 16, 1992, the metal rods were implanted into the decedent. Shortly after that date, the decedent was quite aware of the injuries incurred as a result of the incident in question.
After appellees filed the motion for summary judgment, but before the hearing on the motion, appellant filed an affidavit in the case stating:

AFFIDAVIT OF GLORIA ONDO
COMES NOW, GLORIA ONDO, who after being duly sworn does state:
1. That she is the surviving widow of Michael E. Ondo and the Plaintiff in this case.
2. That she has brought suit against the Defendants in this matter alleging that the surgery on her husband should have not been performed. This was a back surgery wherein the defendants implanted metal rods into my husband's back. The surgery itself should have been reversed by removal of the rods when his doctors found out that the rods were infected.

*923 3. Subsequently, Michael E. Ondo died and I was informed that his death was as a result of an incurable infection because the rods were not removed.
4. I was further informed that the rods should never have been implanted and the surgery which ultimately caused my husband's death was unnecessary.
5. Sometime in late spring of 1993 I became concerned that my husband's insurance carrier was not allowing him to receive the necessary care. As a result, I contacted an attorney to discuss the case and to look into getting my husband adequate care. During that investigation I became aware that the rods should not have been implanted and they should have been removed when they became infected.
6. I have answered interrogatories in this matter. While I answered that I became aware of my husband's injury on the date on which the surgery was performed, I had no idea until I contacted counsel that the surgery was unnecessary and further had no idea that this inappropriate surgery was going to cause my husband's death until he died in September of 1994.
7. I have also answered that I became aware that the surgery should not have been performed when the infection began. In answering this question by "when the infection began" I meant the day I found out the rods were infected which was sometime in late spring of 1993.
FURTHER AFFIANT SAY NOT
Section 95.11(4)(b), Florida Statutes (1995) provides that
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with due diligence....
In Tanner v. Hartog, 618 So.2d 177, 181-82 (Fla.1993), the Florida Supreme Court construed section 95.11(4)(b), Florida Statutes (1995), to mean that
....knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which even the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
In this case, November 16, 1992, was the date it was discovered that the rods in the decedent's back were infected and the date which appellant stated in one set of interrogatories was the date that she and her husband "were more than aware that this procedure should not have been done." Appellant's affidavit, however, contradicts her answers to interrogatories and states that it was not until Spring 1993, after conferring with an attorney, that she became aware that the surgery should not have been done.
Appellant's answers to interrogatories are quite straightforward and unequivocal as to when the decedent, as well as the appellant, became aware of the alleged medical negligence. Appellant's affidavit, on the other hand, equivocates and circumvents the issue of when she and the decedent became aware of the alleged medical negligence.
Even assuming appellant's affidavit created a material issue of fact because it contradicts her answers to the interrogatories, it is well established that a litigant when confronted with an adverse motion for summary judgment, may not contradict or disavow prior sworn testimony with contradictory sworn affidavit testimony. Ellison v. Anderson, 74 So.2d 680 (Fla.1954); Elison v. Goodman, 395 So.2d 1201 (Fla. 3d DCA 1981); Willage v. Law Offices of Wallace and Breslow, P.A., 415 So.2d 767 (Fla. 3d DCA 1982); Cary v. Keene Corp., 472 So.2d 851 (Fla. 1st DCA), rev. denied, 480 So.2d 1294 (1985).
A limited exception to this rule arises where there is a "credible explanation by the affiant as to the reason for the discrepancy *924 between his earlier and later opinions." Croft v. York, 244 So.2d 161, 165 (Fla. 1st DCA), cert. denied, 246 So.2d 787 (Fla.1971). An unsubstantiated assertion is not sufficient to overcome the effect of the prior testimony, however, and the explanation must appear either in the affidavit itself or, viewed as a whole, the record must support the explanation. Goodman; Borders v. Liberty Apartment Corp., 407 So.2d 232 (Fla. 3d DCA 1981), rev. denied, 417 So.2d 330 (1982). The facts of this case do not fit within this exception to the rule.
We accordingly affirm the trial court's granting of summary judgment.
AFFIRMED.
WARNER and GROSS, JJ., concur.