# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1090

_____

| | | |
|---|---|---|
| R&B Appliance Parts, Inc., doing business as Adasen Distributing, | * * * * | |
| Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the Northern |
| Amana Company, L.P., doing business as Amana Appliances, | * * * * | District of Iowa. |
| Appellant. | * | |

_____

Submitted:  June 13, 2001

Filed:    August 3, 2001

_____

Before LOKEN, HALL,[1] and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Amana Company, L.P., sued R&B Appliance Parts, Inc., for the price of items sold to R&B pursuant to a contract for microwave parts ("Microwave Agreement").

_____

[1]The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

R&B counterclaimed, contending that Amana had breached an earlier contract (the "Distribution Agreement") by failing to repurchase portions of R&B's inventory. The district court granted Amana summary judgment on its claim, while a jury found for R&B on its counterclaim.

Amana filed post-verdict motions seeking judgment as a matter of law on the counterclaim and prejudgment interest at a rate of 18% on the judgment rendered for it on its claim. The district court denied the motion for judgment as a matter of law and granted prejudgment interest at a lower rate than Amana had requested. Amana appeals both decisions and we reverse both.

## I.

In 1983, R&B and the Caloric Corporation signed the Distribution Agreement, which entitled R&B to distribute replacement parts for Caloric appliances. The Distribution Agreement provided that it would renew itself on a yearly basis "subject to the right of either [Caloric or R&B] to terminate [the] Agreement ... upon sixty (60) days prior written notice, from the party electing to terminate," sent to the other party via certified mail. In the event that the agreement was terminated, Caloric obligated itself, "upon written request of [R&B] received by Caloric within thirty (30) days after the effective date of termination, [to] repurchase all of [R&B's] new functional replacement parts provided they [were] listed in Caloric's most recent replacement parts price list."

At the time that the Distribution Contract was signed, Caloric and Amana were separately-operated subsidiaries of Raytheon Appliances, Inc. The parties agree that the relationship went smoothly until 1992, when Raytheon consolidated its appliance subsidiaries into a single operation and Amana employees became responsible for the sale of Caloric parts. Amana and Caloric were fully merged under the Amana label in 1994.

Until 1992, R&B appears to have been unchallenged in the southwestern United States market for the distribution of Caloric parts. Once Amana became responsible for Caloric parts sales, however, it installed competing distributors in R&B's market. The resulting competition adversely affected R&B's sales, leaving it with a large unwanted inventory. In May 1992, R&B's president, Bob Burggraf, sent a letter to Amana suggesting that it "adjust[]" R&B's inventory by repurchasing half of that portion of the inventory comprised of Amana, Caloric, and other brand-name parts. Amana did not repurchase any inventory, and R&B continued to purchase Caloric parts from Amana for several more years.

## II.

Amana maintains that it is entitled to judgment as a matter of law on R&B's claim that Mr. Burggraf's letter triggered the repurchase option in the Distribution Agreement. We review the district court's denial of judgment as a matter of law *de novo*, keeping in mind that "[p]ost-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict." *Belk v. City of Eldon*, 228 F.3d 872, 877-78 (8th Cir. 2000), *cert. denied*, 121 S. Ct. 1734 (2001). As a federal court sitting in diversity, we apply Iowa law, the law of the forum, to this case.

For R&B to succeed on its breach of contract claim, it must show, in part, that all of the conditions precedent to Amana's repurchase obligation have occurred. *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). Before Amana can be obligated to repurchase R&B's inventory, R&B must have terminated the Distribution Agreement and must have exercised the option. Amana vigorously disputes that either of these conditions occurred. We need not determine whether the option was exercised, however, because we hold that as a matter of law the Distribution Agreement was never terminated.

In order to terminate the agreement, R&B had to follow the provisions of the agreement relevant to termination, as "[t]he rule is quite universal that such cancellation at the will or demand of one of the parties without the consent of the other can be effected only by strict compliance with such terms and conditions" as are contained within the agreement. *Artificial Ice Co. v. Reciprocal Exchange*, 184 N.W. 756, 759 (Iowa 1921). The Distribution Agreement provides that it could be terminated by means of a written notice sent by certified mail, and the parties agree that such notice was never sent. Under these circumstances, it is plain as a matter of law that the agreement was not terminated.

R&B contends that, although the contractual prerequisites for termination of the Distribution Agreement did not occur, the jury could nevertheless find that the Distribution Agreement terminated. Mr. Burggraf testified at trial that he believed that the Distribution Agreement terminated when Amana took over the sale of Caloric parts. This takeover, however, resulted from Caloric's delegation to Amana of its duty under the Distribution Agreement to provide Caloric parts to R&B. A party to a contract is permitted to delegate its duty of performance to a third party unless the contract specifically provides otherwise, or unless "the other party has a substantial interest in having the original promisor perform or control the acts required by the contract." Iowa Code Ann. § 554.2210.1; *see also* Restatement (Second) of Contracts § 318 cmt. a. Nothing in the Distribution Agreement prevented Caloric from delegating its duties under the agreement to Amana, and R&B had no substantial interest in having Caloric, rather than Amana, perform the contract. R&B therefore cannot cite this delegation as evidence that the agreement had terminated.

R&B also relies on the testimony of Ronald Schnack to support its contention that the Distribution Agreement terminated. Mr. Schnack testified in his deposition, given as the corporate representative of Amana under Fed. R. Civ. P. 30(b)(6), that the Distribution Agreement terminated *ipso facto* when Amana took over sales responsibility from Caloric. At trial, however, Mr. Schnack testified that his deposition

-4-

testimony had been in error. R&B contends that Amana is bound by Mr. Schnack's deposition testimony or, in the alternative, that the jury was entitled to believe the deposition testimony and thus find that the Distribution Agreement had terminated. Neither of these contentions is persuasive.

Although Amana is certainly bound by Mr. Schnack's testimony, it is no more bound than any witness is by his or her prior deposition testimony. A witness is free to testify differently from the way he or she testified in a deposition, albeit at the risk of having his or her credibility impeached by introduction of the deposition. R&B seems to think that Amana is estopped from denying the truth of Mr. Schnack's deposition testimony. Even though we have not defined with precision when a party is estopped by a prior assertion advanced in litigation, we recognize that the purpose of such an estoppel is to protect " 'the integrity of the judicial process,' " *Hossaini v. Western Missouri Med. Ctr.*, 140 F.3d 1140, 1143 (8th Cir. 1998), *quoting Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n.6 (8th Cir. 1987). No threat to the integrity of the judicial process has been posed in this case, and Amana was thus free to assert at trial that the Distribution Agreement had not been terminated.

We also observe that what Mr. Schnack was really testifying to here was not a matter of fact at all. It was a legal conclusion that the agreement had been terminated, which, as we have already said, is incorrect. The jury therefore had nothing before it from which it could conclude that the agreement was terminated. Because the Distribution Agreement was not terminated, Amana was not obligated under the agreement to repurchase parts from R&B. Amana was therefore entitled to judgment as a matter of law on R&B's counterclaim.

III.

In 1997, R&B and Amana executed the Microwave Agreement, authorizing R&B to purchase various microwave products and parts from Amana for resale. R&B

does not dispute that it owes Amana $225,000 for parts purchased pursuant to the Microwave Agreement.

Following the district court's entry of summary judgment for Amana on this claim, Amana requested prejudgment interest on the award. The Microwave Agreement provided that the terms of sale would be provided by Amana from time to time. Beginning in 1997, the terms of sale provided by Amana included a service charge on past due amounts at an interest rate of 18%. Although Amana requested interest at the 18% rate specified in the terms of sale, the district court awarded interest at the Iowa statutory rate of 8.241% instead. We review the district court's ruling on prejudgment interest for an abuse of discretion, *see Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1194 (8th Cir. 2000), and apply Iowa law to the award of prejudgment interest in this diversity case, *see Berglund v. State Farm Mut. Auto. Ins. Co.*, 121 F.3d 1225, 1230 (8th Cir. 1997).

Iowa Code Ann. § 668.13.2 provides that "[i]f the interest rate is fixed by a contract on which the judgment or decree is rendered, the interest allowed *shall* be at the rate expressed in the contract" (emphasis added). The statutory rate employed by the district court, *see* Iowa Code Ann. § 668.13.3, applies only if no such rate is fixed. The facts in the instant case are virtually identical to *Carson Grain & Implement, Inc. v. Dirks*, 460 N.W.2d 483, 485 (Iowa Ct. App. 1990), where no interest rate was specifically mentioned in the oral contract at issue, but bills sent pursuant to the contract included a finance charge of 18% on late accounts. In that case, the court awarded prejudgment interest at the rate of 18%. *See id.*

It follows that here the district court committed an error of law by awarding a lower interest rate than that provided by the terms of sale and thus abused its discretion. *See Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1070 (8th Cir. 2000). We therefore remand the award of prejudgment interest to the district court for calculation at the proper rate.

IV.

For the foregoing reasons, the judgment of the district court is reversed and remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.