820 So.2d 1040 (2002)
E. Edgar COSMAN, Appellant,
v.
BEA MORLEY REAL ESTATE GROUP, INC., Appellee.
No. 4D01-2287.
District Court of Appeal of Florida, Fourth District.
July 10, 2002.
*1041 Bruce Botsford of Bruce Botsford, P.A., and Cam Justice of Lawlor, Winston & Justice, P.A., Fort Lauderdale, for appellant.
John M. Mullin and Victoria L. Cook of Duke, Mullin & Galloway, P.A., Fort Lauderdale, for appellee.
STEVENSON, J.
This is an appeal from a final judgment awarding the appellee, Bea Morley Real Estate Group, Inc. (hereinafter Morley), $22,500 as a ten percent commission for the sale of real property. Appellant/seller, E. Edgar Cosman, argues that an issue of fact existed as to whether Morley orally agreed to accept payment from post-closing proceeds only, which ultimately amounted to about $3,900. We agree and reverse the final summary judgment.
In September of 1998, Cosman entered into a written agreement with Morley whereby Morley agreed to use its best efforts to secure a purchaser for the Omni Nightclub. Cosman was the principal owner of Brown Brothers Equities Corp., the business which operated the Omni. The agreement provided that Cosman would pay Morley ten percent of the gross sale price of the business at the closing. The agreement expired on December 1, 1998. Nonetheless, in March of 1999, Morley provided Cosman with a buyer, Victor Lewandowski. Cosman and Lewandowski reached an agreement for the sale of the Omni for the price of $225,000, with Cosman agreeing to pay Morley a ten percent commission. Cosman's attorney, John Hurley, subsequently inserted a provision in the contract providing that Morley was to get a ten percent commission.
On or about September 11, 1999, Cosman and Lewandowski closed on the sale of the business. Cosman contends, however, that he was only paid approximately $36,000 at closing, $29,600 of which was paid to the landlord of the business as part of a settlement. According to Cosman, after closing costs, he received a mere *1042 $3,900 out of the closing proceeds and, as a result, Morley was not paid the ten percent commission.
On March 29, 2001, citing the parties' agreement, Morley filed a motion for summary judgment pursuant to Florida Rule of Civil Procedure 1.510. Cosman countered, asserting that, when problems arose with the closing, Bea Morley agreed to forego a commission from the closing proceeds and, instead, agreed to obtain the commission from whatever post-closing proceeds remained available. According to Cosman, Bea Morley's representations in this regard estopped her from seeking her commission until he received the proceeds from the sale of the business.
A party claiming estoppel must show:
1) a representation as to a material fact that is contrary to a later-asserted position; 2) reliance on that representation; and 3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.
State Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981). In support of his estoppel argument, Cosman filed an affidavit stating that (1) Morley encouraged him to proceed with the closing despite the fact that the purchaser did not have all the necessary funds and (2) Morley agreed to receive payment from only the post-closing proceeds. Morley asserted that these conversations never took place and there was no agreement to forego her commission. In addition, Morley argued that Cosman's affidavit statements contradicted his earlier deposition testimony where Cosman had stated that Morley "didn't advise me anything" when told of the potential problems with the closing.[1] The trial court granted the motion for summary judgment and awarded Morley $22,500.
"[A] party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought." Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985). On appeal, Cosman asserts that the summary judgment was improper, pointing to his affidavit as creating issues of fact regarding whether Morley encouraged him to go forward with the transaction and agreed to accept payment from the post-closing proceeds to facilitate the sale. On the other hand, Morley argues that the trial court properly disregarded the affidavit because it was in conflict with an earlier deposition. See Ondo v. F. Gary Gieseke, P.A., 697 So.2d 921, 923 (Fla. 4th DCA 1997)(stating that "when confronted with an adverse motion for summary judgment, [a litigant] may not contradict or disavow prior sworn testimony with contradictory sworn affidavit testimony"), rev. denied, 707 So.2d 1126 (Fla.1998). We *1043 conclude that the trial court erred in granting summary judgment in this case.
First, in our view, none of the deposition questions at issue clearly called for Cosman to declare that Bea Morley had said that she would accept her commission from post-closing proceeds in order to facilitate the closing. Second, the questions were posed to Cosman at the deposition by Morley's counsel, and shortly thereafter, the deposition was halted because the parties wanted to go to the trial court to resolve an attorney-client privilege issue which had arisen during the deposition. The deposition was never resumed and Cosman's counsel never had the opportunity to clarify Cosman's deposition answers or his position in regard to the lawsuit. Because there is a credible explanation in the record for the apparent discrepancy between the earlier deposition and the later-filed affidavit, the trial court erred in refusing to give credence to the affidavit. See Ondo, 697 So.2d at 923.
Accordingly, the final summary judgment on review is REVERSED.
GUNTHER and MAY, JJ., concur.
NOTES
[1] The pertinent testimony at the deposition was as follows:

Q: What was the substance of your conversations with her [Bea Morley]?
A: I informed her that the buyers were not going to have sufficient funds for closing and that there would not be sufficient funds for closing and that there would not be enough funds for her commission. She was not happy about it.
Q: What did she advise you?
A: Didn't advise me anything.
Q: So you simply told her there wasn't going to be enough money to close?
A: Yes.
Q: Is that a fair characterization of the conversation?
A: There wasn't going to bethe agreed upon down was not going to be available at closing.