HANZMAN, MICHAEL J., Associate Judge.
Appellant, Carriage Hills Condominium, Inc., (“Carriage Hills”), appeals the trial court’s entry of a summary final judgment in favor of Appellee, JBH Roofing and Construction, Inc., (“JBH”). Carriage Hills contends that the lower court erred by: (a) striking two affidavits filed in opposition to JBH’s motion on the basis that each directly contradicted deposition testimony of its corporate representative, and (b) entering summary final judgment based solely on that deposition testimony which, according to Carriage Hills, did not establish the absence of any genuine issue of material fact to be tried. We agree and reverse.
A. FACTS AND RELEVANT PROCEDURE
Despite being over pled, this case presents a garden-variety contract dispute. Carriage Hills, through its board of directors (“Board”), operates an “over 55” condominium community. In 2006 the Board retained JBH to repair roof damage resulting from Hurricane Wilma. The parties entered into what is referred to in the industry as a “full scope contingency contract,” which obligated JBH to perform only work approved by Carriage Hills’ public adjuster, and to accept payments approved by, and received from, Carriage Hills’ insurer.
In July 2007, shortly after its contract was terminated by the Board, JBH filed suit asserting claims for breach of contract, tortious interference, promissory es-toppels, and unjust enrichment. Count I (“Breach of Contract”) alleges no less than thirteen claimed breaches, including: (a) an alleged failure to pay for repairs approved by the carrier; (b) an alleged failure to diligently present claims for loss to the carrier; and (c) the retention of other roofing contractors to perform work that should have gone to JBH pursuant to the contract. In Count II (“Tortious Interference with Business Relationships”), JBH claims that Carriage Hills intentionally interfered with advantageous business relationships it enjoyed with Carriage Hills’ public adjuster and insurance carrier. Count III (“Promissory Estoppel”) alleges that JBH forewent other opportunities in detrimental reliance on Carriage Hills’ promise to retain it to perform roofing work, including work for damages caused by Hurricane Wilma. Finally, Count IV (“Unjust Enrichment”) alleges that Carriage Hills would be unjustly enriched if allowed to retain the benefits of repairs made by JBH without paying for them.
Carriage Hills answered and raised twelve affirmative defenses alleging, among other things, that (1) the contract was “executed without Board approval”; (2) that it had already paid JBH in full for all work performed; (3) that JBH failed to mitigate damages; and (4) that JBH faded to perform its repairs satisfactorily or with due diligence. Carriage Hills also filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and slander of title.
While both parties were quick out of the gate with aggressive pleadings, it was not until January 2010 that the first — and to date only — deposition was taken. It occurred when JBH noticed the “Corporate Representative of Carriage Hills Condo with the most knowledge of the allegations contained in the complaint.” The notice made no reference to any particular issued) to be addressed, or to Carriage *333 Hills’ affirmative defenses and counterclaims. Carriage Hills tendered Ms. Diane Foley, who at that time was one of its board members. Ms. Foley, in her then capacity as President of the association, executed the JBH contract and was apparently the person with “the most knowledge” of the allegations in the complaint. Carriage Hills nevertheless maintains that its Board was divided on the issue of whether to terminate the JBH contract, and that Ms. Foley was in the minority.
After testifying that she was authorized to execute the contract, a point now conceded by Carriage Hills, Ms. Foley was repeatedly asked whether, in her “opinion,” contentions within the parties’ pleadings were accurate. When asked whether she “believed” JBH had breached the contract, she responded, “In my layman opinion, no.” Similarly, when directed to Carriage Hills’ contention that JBH failed to exercise due diligence in the performance of the contract, she acknowledged that while other board members were of that view, she did not “share with that opinion.” She testified that she was “not aware” of any unauthorized work performed, and that she “believed” that JBH completed all the tasks it was authorized to do up to the time of termination. She also did not believe JBH’s work was defective. On the question of whether JBH was owed money, Ms. Foley responded that “in my opinion, it is possible,” but she did “not know” whether JBH was in fact due additional funds.
Armed with Ms. Foley’s testimony, JBH filed its Motion for Summary Judgment. According to JBH there was no issue to be tried because Ms. Foley admitted: “(1) the existence of a contract; (2) general liability; (3) that damages [are] due to JBH; (4) a denial on their [Carriage Hills] own affirmative defenses ...; and (5) a general admission that their entire defense is a vendetta against a former board president and current representative [Ms. Foley].” The Motion did not specify whether it was seeking an adjudication on all — or only some — of the counts asserted in the complaint, or whether it also sought an adjudication on any of the counterclaims.
Carriage Hills responded with the affidavits of Ralph D’Alconzo, its former president, and Grace Barona, its treasurer. Mr. D’Alconzo testified that JBH performed “substandard work with respect to the roof systems” and “submitted duplicate charges.” He also testified that JBH “conducted unauthorized work, including work that was not paid for [by the carrier].” Ms. Barona similarly testified that due to JBH’s shoddy repair work, Carriage Hills was forced to retain other roofing contractors to fix “water leaks and problems encountered with the roof system,” and that JBH improperly invoiced Carriage Hills for work that had not been approved by the insurance carrier. She also testified that JBH was paid all of the funds approved by — and received from— the insurer.
Finding that Ms. Foley, as its corporate representative, was “Carriage Hills,” and that her testimony was therefore disposi-tive, the trial court struck the D’Alconzo and Barona affidavits, invoking the principle that “[i]n situations where the non-movant in a motion for summary judgment submits an affidavit which directly contradicts an earlier deposition ..., courts may disregard the later affidavit.” Hyde v. Stanley Tools, 107 F.Supp.2d 992, 993 (E.D.La.2000). The trial court then granted JBH’s Motion for Summary Judgment based on Ms. Foley’s testimony. Carriage Hills timely appealed. Our review is de novo. See Carnes v. Fender, 936 So.2d 11, 13 (Fla. 4th DCA 2006).
*334 B. RULE 1.310(b)(6) AND THE BINDING EFFECT OF A CORPORATE REPRESENTATIVE’S TESTIMONY
To place matters in a proper context we begin our review by summarizing how Florida Rule of Civil Procedure 1.310(b)(6) — which governs corporate representative depositions — is supposed to operate, an exercise which illustrates that the present dispute resulted in large part due to both parties’ failure to follow its procedures.
As we have previously pointed out, the substance of Rule 1.310(b)(6) was borrowed from a 1970 amendment to its federal counterpart, Federal Rule of Civil Procedure 30(b)(6). See Plantation-Simon Inc. v. Bahloul, 596 So.2d 1159, 1160 (Fla. 4th DCA 1992).[1] Designed in part to streamline litigation, Rule 30(b)(6) imposes burdens upon both parties. The party seeking discovery is required to describe, with reasonable particularity, the matter(s) for examination. The responding entity must then produce one or more witnesses who can testify as to the corporation’s knowledge of the specified topics. Great Am. Ins. Co. of New York v. Vegas Constr. Co., 251 F.R.D. 534, 538 (D.Nev.2008). This “enables [the] deposing party to gather information from [the] corporation by way of a human being named by that corporation to serve as the corporation’s voice.” Bracco Diagnostics Inc. v. Amersham Health Inc., No. 03-6025, 2005 WL 6714281, at *1 (D.N.J. Nov. 7, 2005).
Moreover, the person(s) designated to testify represents the collective knowledge of the corporation, not of the individual deponents. As the corporation’s “voice” the witness does “not simply testify [ ] about matters within his or her personal knowledge, but rather is ‘speaking for the corporation.’ ” Rainey v. Amer. Forest & Paper Ass'n, 26 F.Supp.2d 82, 94 (D.D.C.1998) (citing U.S. v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.1996)). Put simply, the corporation appears vicariously through its designees. Taylor, 166 F.R.D. at 361.
As the “voice” of the entity, the witness is required to “testify about matters known or reasonably available to the organization.” Fla. R. Civ. P. 1.310(b)(6). “The [organization] must prepare the des-ignee to the extent matters are reasonably available, whether from documents, past employees, or other sources.” Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir.2006) (citation omitted). That preparation must enable the designee to “give complete, knowledgeable, and binding answers on behalf of the corporation.” Marker v. Union Fid. Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C.1989). If the deponent cannot answer questions regarding the designated subject matter, “the corporation has failed to comply with its [Rule 1.310(b)(6) ] obligation and may be subject to sanctions.... ” King v. Pratt & Whitney, a Div. of United Techs. Corp., 161 F.R.D. 475, 476 (S.D.Fla.1995).
Rule 1.310(b)(6) does not require— or for that matter even contemplate — that the corporation produce the witness with the “most knowledge” on the specified topic(s), and the witness is not required to possess any personal knowledge at all. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1146 (10th Cir.2007); Federal Civil Rules Handbook, 2012 Ed. at p. 838 (“[T]he individual will often testify to matters outside the individ *335 ual’s personal knowledge.”); see also PPM Fin., Inc. v. Norandal USA, Inc., 392 F.Sd 889, 894-95 (7th Cir.2004) (a Rule 30(b)(6) witness is “free to testify to matters outside his personal knowledge as long as they were within the corporate rubric.”). In fact, a corporation may have good reason not to produce the “most knowledgeable” witness as its Rule 1.310(b)(6) desig-nee, see QBE Ins. Corp. v. Jorda Enters., Inc., 277 F.R.D. 676, 688-89 (S.D.Fla.2012), an example being a case such as this where the person with the “most knowledge” (i.e., Ms. Foley) may not totally embrace the corporation’s position.
Utilized properly, Rule 1.310(b)(6) streamlines the discovery process and gives the corporation being deposed more control by permitting it to select and prepare a witness to testify on its behalf. See Taylor, 166 F.R.D. at 361. In exchange for that control the entity is required to “have the right person present at the deposition.” King, 161 F.R.D. at 476. This of course benefits the requesting party as it prevents the corporation from frustrating the “opposing party’s discovery by simply playing ‘ping-pong” with him: the first official would disclaim knowledge, as would the second, and so on.” Plantation-Simon Inc., 596 So.2d at 1160.
When a Rule 1.310(b)(6) deposition is properly noticed and conducted, the testimony of the designee “is deemed to be the testimony of the corporation itself.” State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 212 (E.D.Pa.2008). As such, the testimony is binding on the entity. See, e.g., Resolution Trust Corp. v. Farmer, No. 92-3310, 1994 WL 317458, at *1 (E.D.Pa. June 24, 1994) (“The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation.”) (citations omitted). That does not, however, mean that the testimony is akin to a judicial admission which conclusively establishes a fact and estops the corporate party from offering other evidence on the matter. See State Farm Mut. Auto. Ins. Co., 250 F.R.D. at 212. Rather, “testimony given at a [Rule 1.310(b)(6)] deposition is evidence which, like other deposition testimony, can be contradicted.” Indus. Hard Chrome, Ltd. v. Hetran, Inc., 92 F.Supp.2d 786, 791 (N.D.Ill.2000). As one court put it:
It is true that a corporation is “bound” by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be “bound” by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue.
W.R. Grace & Co. v. Viskase Corp., No. 90 C 5383, 1991 WL 211647, at *2 (N.D.Ill. Oct. 15, 1991); see also Trunnell v. Advance Stores Co., No. 1:11CV38-SPM/GRJ, 2012 WL 629527, at *2 (N.D.Fla. Feb. 28, 2012) (citing AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 229 n. 9 (3d Cir.2009); A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir.2001); R & B Appliance Parts, Inc. v. Amana Co., 258 F.3d 783, 787 (8th Cir.2001); and 8A Wright, Miller and Marcus, Federal Practice and Procedure § 2103 at 469-71 (3d ed. 2010)).
The fact that Rule 1.310(b)(6) testimony is not conclusive does not mean that the corporation “may retract prior testimony with impunity.” State Farm Mut. Auto. Ins. Co., 250 F.R.D. at 212. Like any litigant a corporate party, “when met by a motion for summary judgment, may not repudiate or contradict by affidavit [its] previous deposition testimony so as to create a jury issue.” Cary v. Keene Corp., 472 So.2d 851, 853 (Fla. 1st DCA 1985) (citation omitted). As the Florida *336 Supreme Court put it, a party should not be permitted to “baldly repudiate his previous deposition so as to create a jury issue.” Ellison v. Anderson, 74 So.2d 680, 681 (Fla.1954); see also Ondo v. F. Gary Gieseke, P.A., 697 So.2d 921 (Fla. 4th DCA 1997).
This principle, designed to protect the integrity of the judicial process, is not absolute. An exception arises when there is a “credible explanation by the affiant as to the reason for the discrepancy between his earlier and later” testimony. Croft v. York, 244 So.2d 161, 165 (Fla. 1st DCA 1971); see also Van T. Junkins v. U.S. Industries, Inc., 736 F.2d 656, 656 (11th Cir.1984) (“Although there may be some occasions where a party may by affidavit clarify testimony given in [a] deposition and thereby create a genuine issue as to a material fact, we ... hold a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation.”). As a result, every discrepancy between deposition testimony and a later affidavit does not justify a trial court’s “refusal to give credence to such evidence.” Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir.1980); see also Choudhry v. Jenkins, 559 F.2d 1085, 1090 (7th Cir.1977) (finding summary judgment improper since later testimony was not a transparent sham).
C. ANALYSIS
Returning to the facts at hand, we first observe that the deposition of Ms. Foley was not properly noticed — or conducted — as prescribed by Rule 1.310(b)(6). The deposition notice makes no reference to the Rule at all, nor does it request that Carriage Hills “designate” one or more witnesses “to testify on its behalf ... about matters known or reasonably available to the organization.” Fla. R. Civ. P. 1.310(b)(6). It instead recites that JBH will take the deposition of the “corporate representative of Carriage Hills Condo with the most knowledge of the allegations of the complaint.” Though many members of the bar send such notices, “[n]ot only does the rule not provide for this type of discovery demand, but the request is also fundamentally inconsistent with the purpose and dynamics of the rule.” QBE Ins. Corp., 277 F.R.D. at 688. As we discussed earlier, Rule 1.310(b)(6) allows the corporation to select and prepare a designee without regard to his personal knowledge — or lack thereof.[2] The notice also fails to “designate with reasonable particularity the matter on which examination is requested,” as required by Rule 1.310(b)(6). Its reference to “the allegations contained in the complaint” is unduly broad, particularly in a case involving a multi-count pleading sounding in contract and tort.
In response to this defective notice, Carriage Hills obliged JBH and produced Ms. Foley — the person who it believed had the “most knowledge” of the allegations in the complaint. She was tendered despite the fact that she disagreed with many of the corporation’s positions. And contrary to the trial court’s finding, Carriage Hills was not obligated to also designate “those persons it [Carriage Hills] felt had a different opinion from Mr. Foley.” If Rule 1.310(b)(6) was followed, Carriage Hills was free to designate anyone it wished, so long as it adequately prepared the witness to speak as the “voice” of the corporation. The notice sent by JBH, however, asked *337 not for a Rule 1.310(b)(6) designee, but rather for the person with the “most knowledge”—and JBH received exactly what it requested. Had JBH wanted to ensure the attendance of a witness who would act solely as the “voice” of the corporation—and convey only the corporation’s position, it was required to comply with Rule 1.310(b)(6).
Carriage Hills likewise failed to satisfy its burden under Rule 1.310(b)(6), perhaps because the deposition was not noticed under the Rule. It did not prepare Ms. Foley to testify as to the corporation’s position, and she in fact did just the opposite, making clear that her “beliefs” and “opinions” were not necessarily “shared” by the Board. She also repeatedly disclaimed knowledge on critical issues such as whether JBH was paid all amounts it was owed, and repeatedly testified that she was “not aware” of facts tending to prove—or disprove—JBH’s claims and Carriage Hills’ defenses. In sum, it is clear that she testified only as to her personal knowledge, regardless of whether her views were shared by the corporation. She was not prepared to—nor did she— serve as Carriage Hills’ “voice” as would a properly noticed and prepared Rule 1.310(b)(6) designee.
Ms. Foley’s testimony, including that relied upon as a basis for the trial court’s summary judgment order, also exceeded the scope of the deposition notice. Even assuming she appeared as a properly noticed Rule 1.310(b)(6) designee on the subject of the allegations contained in JBH’s complaint, the testimony JBH highlighted in support of its motion was directed largely at Carriage Hills’ affirmative defenses, and in particular, defenses that were totally distinct from the complaint’s averments. As a result, her testimony clearly exceeded the scope of the notice and did not bind Carriage Hills. See Fal-chenberg v. New York State Dep’t of Educ., 642 F.Supp.2d 156, 164 (S.D.N.Y.2008) (“Questions and answers exceeding the scope of the ... notice will not bind the corporation, but are merely treated as the answers of the individual deponent.”).
Moreover, even if we considered Ms. Foley to be a proper Rule 1.310(b)(6) des-ignee as to all matters addressed in the deposition, the affidavits proffered by Carriage Hills did not “directly contradict” her testimony. On the question of whether JBH was owed money, Ms. Foley conceded only that “it is possible.” Similarly, she offered only her “layman opinion” on the question of whether JBH breached the agreement, an opinion she made clear was not shared by the corporation. She also said that she was “not aware” of any unauthorized or defective work, not that Carriage Hills’ claims to the contrary were false. This is hardly the type of unequivocal testimony that Carriage Hills would be precluded from rebutting. Compare with Hyde, 107 F.Supp.2d at 993 (E.D.La.2000) (subsequent affidavit contradicted deposition testimony regarding identity of manufacturer of the hammer at issue).
To be sure, the trier of fact will be able to consider Ms. Foley’s testimony, and Carriage Hills may be “bound” by it as any witness is bound “by his or her prior deposition testimony.” R & B Appliance Parts, Inc. v. Amana Co., L.P., 258 F.3d 783, 786 (8th Cir.2001) (noting that witnesses may change their testimony at trial subject to the risk of having their credibility impeached with deposition testimony). But the alleged discrepancy between Ms. Foley’s deposition testimony and that offered by Carriage Hills was not the type of “red light—green light” bald repudiation or contradiction warranting the extreme measure employed below, a measure courts should invoke sparingly, particularly when the witness is a person *338 other than the individual who testified as the corporate designee. It is one thing to strike the testimony of a witness who directly contradicts his own prior statements given under oath. It is another thing to strike the testimony of a witness on the basis that it contradicts that of another person “designated” to speak on behalf of a corporation. In a situation where both witnesses clearly “speak” for the corporate party — and the contradiction is clear and unequivocal — such relief is surely permissible. See, e.g., Hyde, 107 F.Supp.2d at 993. The option to strike relevant testimony should, however, be exercised only when necessary to protect “the integrity of the judicial process.” R & B Appliance Parts, Inc., 258 F.3d at 787.
To summarize, we hold that before a trial judge may strike testimony offered by an entity on the basis that it repudiates or contradicts prior testimony given by a corporate representative, it must find that: (1) the prior deposition testimony was provided by a duly noticed Rule 1.810(b)(6) designee on a matter specified in the deposition notice, see Fla. R. Civ. P. 1.310(b)(6); (2) that the testimony subject to the motion to strike directly contradicts or repudiates unequivocal prior testimony regarding matters of fact, see Cary, 472 So.2d 851; Kennett-Murray Corp., 622 F.2d 887; R & B Appliance Parts, Inc., 258 F.3d 783; (3) that there is no credible and reasonable explanation for the discrepancy, see Hyde, 107 F.Supp.2d at 993; and (4) that striking the testimony is necessary in order to protect “the integrity of the judicial process,” see R & B Appliance Parts, 258 F.3d at 787. Absent such findings the alleged discrepancy is a matter to be considered by the trier of fact. As none of these criteria are satisfied here, the trial court erred in striking Carriage Hills’ affidavits.
Having found that the trial court erred in striking the testimony proffered by Carriage Hills in opposition to JBH’s Motion for Summary Judgment, we need not address the question of whether Ms. Foley’s testimony, standing unopposed, established the absence of any genuine issue of material fact. Nor do we need to address Carriage Hills’ contention that it was deprived due process by JBH’s failure to articulate the claims and defenses on which judgment was being sought.
The trial court’s order entering summary final judgment in favor of JBH is reversed and this cause is remanded for further proceedings consistent with this opinion.
GROSS and DAMOORGIAN, JJ., concur.

. Because our rules of court procedures were patterned closely after the federal rules, federal cases interpreting comparable provisions are persuasive and routinely looked to for interpretive guidance. See Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 611 (Fla. 4th DCA 1975).

. As the QBE court also noted, "permitting a requesting party to insist on the production of the most knowledgeable witness could lead to tíme wasting disputes over the comparative level of the witness' knowledge.” 277 F.R.D. at 688.