DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JENNIFER MEZADIEU,**
Appellant,

v.

**SAFEPOINT INSURANCE COMPANY,**
Appellee.

No. 4D20-2

[March 26, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE 16-017852 (08).

Erin M. Berger and Melissa A. Giasi of Giasi Law, P.A., Tampa, for appellant.

Hope C. Zelinger and Lilian Rodriguez-Baz of Bressler, Amery & Ross, P.C., Fort Lauderdale, for appellee.

DAMOORGIAN, J.

Jennifer Mezadieu ("the Homeowner") appeals the trial court's entry of final summary judgment in favor of SafePoint Insurance Company ("SafePoint") in her breach of contract action. The trial court entered final summary judgment pursuant to the policy's "concealment or fraud" provision after determining that the repair estimate prepared by the Homeowner's loss consultant included material false statements. On appeal, the Homeowner argues that summary judgment was improper because issues of material fact remained as to whether: (1) the estimate contained false statements; (2) the false statements were material; and (3) the Homeowner intended to rely on the false statements. We affirm on all issues and write only to address the reliance issue.

The Homeowner owns a home insured by SafePoint. On February 25, 2016, the Homeowner submitted a notice of claim with SafePoint alleging that the residence sustained damage caused by a water leak in the second-floor bathroom. The notice identified Contender Claims Consultants ("Contender") as the Homeowner's loss consultant.

SafePoint agreed to investigate the claim and, on March 9, 2016, had the home inspected by an independent adjuster and a building scientist. According to SafePoint's building scientist, a loss consultant from Contender was present during the inspection and directed SafePoint's agents to parts of the home claimed to have sustained damage from the leak, including the kitchen located directly below the second-floor bathroom. After concluding its investigation, SafePoint determined the alleged damages were consistent with chronic moisture exposure occurring over a minimum period of six weeks in duration prior to the reported date of loss, and inconsistent with the damage being caused by a one-time leak. SafePoint accordingly denied the claim pursuant to Section I of the policy, which excludes coverage for damages caused by "[c]onstant or repeated seepage or leakage of water or steam . . . which occurs over a period of time."

In response, Homeowner filed a breach of contract action against SafePoint. In her complaint, the Homeowner asserted she previously provided SafePoint "with a damage estimate for a covered loss in the amount of $43,181.01," and that she "sustained unpaid damages in the amount of $43,181.01." The Homeowner later filed the detailed, itemized estimate—prepared by Contender—with the court. The estimate sought damages for nearly every room of the house, including $1,712.83 for the living room; $1,567.21 for the dining room; and $11,107.72 for the kitchen. Notably, the estimate included line items for the replacement of the kitchen cabinets.

After answering the complaint and denying that the loss was covered under the policy, SafePoint served interrogatories on the Homeowner. One of the interrogatory questions asked the Homeowner to: "Describe in as much detail as you will provide at trial the damages you are claiming as a result of this lawsuit and please provide an itemized breakdown of the damages as well as your method of calculation." In her sworn interrogatory responses, the Homeowner responded to the question as follows: "$43,181.01, as per the written estimate prepared by [Contender] submitted with Plaintiff's Responsive Documents to Defendant's Request for Production."

In June 2018, SafePoint deposed the Homeowner. At the deposition, the Homeowner referenced the Contender estimate and confirmed that, consistent with the estimate, she was claiming $43,181.01 in damages. When questioned about the line items in the estimate, however, the Homeowner all but conceded that the estimate contained false statements. For example, when asked if the reported leak caused damage to the

kitchen cabinets, the Homeowner disclosed that the cabinets had actually been damaged by a prior leak in the kitchen—a leak which the Homeowner made a claim for with a different insurer—and that the leak at issue did not cause any damage to the kitchen cabinets. In fact, the Homeowner testified that aside from the kitchen ceiling, the leak did not cause any other damage to the kitchen. Likewise, the Homeowner testified that she did not see damage in any of the other rooms on the first-floor, and that the water remediation company that she hired after discovering the leak did not do any work on the first-floor.

Based on the Homeowner's sworn interrogatory answers and deposition testimony, SafePoint amended its answer to include an affirmative defense based on the policy's "concealment or fraud" provision. That provision states that SafePoint will not provide coverage for an otherwise covered loss if, whether before or after the loss, one or more "insureds" have:

> (1) Intentionally concealed or misrepresented any material
>     fact or circumstance;
> (2) Engaged in fraudulent conduct; or
> (3) Made material false statements;
> relating to this insurance.

SafePoint later moved for summary judgment pursuant to that provision.

The matter ultimately proceeded to a summary judgment hearing. At no point prior to the hearing did the Homeowner seek to revise the estimate or otherwise submit a new estimate. At the hearing, the Homeowner's attorney made the following concessions: (1) the Homeowner "has never said that she does not agree with [the] sworn proof of loss;" (2) the Homeowner adopted the estimate; and (3) the estimate should not have included $11,000 for damages to the kitchen and that it would therefore be appropriate for the trial court to grant partial summary judgment, or alternatively, strike $11,000 from the total damages claimed by the Homeowner.[1]

---

[1] The attorney's concessions, standing alone, established that the estimate contained material false statements as a matter of law. *See Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880) ("[A]ny fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure equally as if established by the clearest proof."); *see also Wong Ken v. State Farm Fire & Cas. Co.*, 685 So. 2d 1002, 1003 (Fla. 3d DCA 1997) (affirming summary judgment which was entered pursuant to a similar concealment or fraud provision in a case where the uncontested facts established that the insured misrepresented to the insurer that he incurred $85,000 in additional living expenses after the insurer voluntarily paid over $1 million under the policy).

At the conclusion of the hearing, the trial court found that the uncontroverted summary judgment evidence established the estimate contained material false statements. The court also concluded that the false statements were attributable to the Homeowner because she adopted the estimate as her own in both her sworn interrogatory answers and deposition testimony, and because Contender was acting as her agent.

On appeal, the Homeowner argues that she should not be punished for the estimate prepared by Contender because she did not intentionally rely on the false statements contained therein. SafePoint counters that intentionality is not required, and that the material false statements made in the estimate are attributable to the Homeowner because she adopted the estimate as her own statement. We agree with SafePoint.

It is well established that "[a] party is bound by his or her admissions under oath, be it by deposition or interrogatories." *Dicus v. Dist. Bd. of Trs. for Valencia*, 734 So. 2d 563, 564 (Fla. 5th DCA 1999) (citing *Ondo v. F. Gary Gieseke, P.A.*, 697 So. 2d 921 (Fla. 4th DCA 1997)). Here, by specifically referencing the estimate in her sworn interrogatory answers and in her deposition testimony for the purpose of representing the amount of damages, the Homeowner adopted the estimate as her own statement. As the estimate undisputedly included at least $11,000 in repairs unrelated to the leak, the Homeowner made material false statements relating to the claim.

The Homeowner nonetheless maintains that she should not be held responsible for the material false statements made in the estimate because she did not intentionally rely on the false statements. We reject this argument for two reasons. First, as evidenced by her deposition testimony, the Homeowner clearly knew that the kitchen cabinets (and kitchen in general for that matter) had not been damaged by the leak. And yet, despite the estimate clearly listing line items for the kitchen cabinets, the Homeowner relied on the estimate in initially reporting the claim to SafePoint and later adopted the estimate as her own statement in the lawsuit. Moreover, even after the Homeowner acknowledged during her deposition testimony that the kitchen cabinets were not damaged by the leak, she still made no attempt to revise the estimate prior to the summary judgment hearing. Under these circumstances, it cannot be said that the Homeowner did not intend to rely on the false statements.

Second, even if the Homeowner did not intend to rely on the false statements contained in the estimate, a showing of intent is not required under the policy's concealment or fraud provision. In *Universal Property*

4

*& Casualty Insurance Co. v. Johnson*, the court analyzed the same "concealment or fraud" clause, albeit in the context of a false statement made on an insurance application, and held that the material false statement need not be intentional. 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013). In so holding, the *Johnson* court explained that "given the language of subsection [(1)], subsection [(3)] would be superfluous if a 'false statement' under [(3)] included only intentionally false statements." *Id.* (reiterating that "a contract will not be interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so"); *accord Privilege Underwriters Reciprocal Exch. v. Clark*, 174 So. 3d 1028, 1031 (Fla. 5th DCA 2015) (agreeing with the *Johnson* court's interpretation of the concealment or fraud provision and holding that "a showing of intent is not required under the provisions of this policy"). We agree with, and adopt, the *Johnson* court's interpretation.

Simply put, an insured cannot blindly rely on and adopt an estimate prepared by his or her loss consultant without consequence. This is not to say that an insured will always be bound by the representations made in an estimate prepared by his or her loss consultant. However, when an insured relies on or adopts an estimate containing material false statements to support his or her claim, the insured is bound by the estimate and cannot avoid application of the concealment or fraud provision simply because he or she did not prepare the estimate.

*Affirmed.*

FORST, J., concurs.
WARNER, J., concurs specially.

WARNER, J., specially concurring.

But for the attorney's concession that SafePoint was entitled to partial summary judgment on the damage to the kitchen, I would dissent because I conclude that the insured's deposition testimony did not concede that any statements were false, or that she knew that the loss estimate contained items for repair or replacement which were not caused by the water leak. In fact, there is no evidence that the loss consultant included repairs which were not caused either directly or indirectly by the water leak or the efforts to repair. The insured may not have seen damage in some of the rooms of her home which were included in the estimate, but that does not mean that the damage was not behind the walls. It appears to me that the estimate in this case, even in the kitchen, included repairs required to remedy damaged walls, which could easily require cabinet removal or painting walls in rooms which may not appear to be damaged.

5

Since there was no evidence that the loss consultant included work that was not required as a result of the loss, there were material issues of fact remaining.

The insured's attorney, however, admitted that the court could grant partial summary judgment as to the kitchen repairs, which would remove $11,000 from the $43,181 estimate—about a quarter of it. His statement amounts to an admission that the estimate included false statements for repairs to damage that did not occur. "A party is [] bound by factual concessions made by that party's attorney before a judge in a legal proceeding." *Dicus v. Dist. Bd. of Trs. for Valencia*, 734 So. 2d 563, 564 (Fla. 5th DCA 1999) (footnote omitted).

As to the last paragraph of the majority opinion, I disagree that the insured should face forfeiture of policy benefits because she relied on a loss consultant's estimate. An insured is no expert as to what repairs are needed to a structure after a loss, nor their cost. The insured hires a consultant to make sure that the insurer does not shortchange the insured through its claims evaluation process. The estimate is simply an opinion of what property is damaged by the covered incident and the cost to repair that property.

The insured's statements in reference to the estimate in this case are not like the false statement in *Universal Property & Casualty Insurance Co. v. Johnson*, 114 So. 3d 1031 (Fla. 1st DCA 2013), where the insured denied having been convicted of a felony on the insurance application, which was information that must have come from the insured. There, the court noted that even if the statement was unintentional, it still affected the insurer's risk, and the insurer would not have issued the policy had it known of the conviction. In cases of loss estimates such as here, however, the insurer can, and does, make its own determination regarding the amount of the loss and the requirements for repairs. The insurer does not pay a loss solely on the basis of the insured's loss estimate. Therefore, the insured's loss estimate does not affect the insurer's risk nor cause an overpayment for a loss.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***